**Mrs. E. L. GATES, Appellant,**

**v.**

**JARVIS, CORNETTE & PAYTON, a Law Firm Consisting of Samuel T. Jarvis, Dan Cornette, William E. Payton, and Associate, Rees Kinney, Appellees.**

Court of Appeals of Kentucky.

March 26, 1971.

Bartlett, McCarroll & Nunley, Owensboro, for appellant.

Rees Kinney, Greenville, for appellees.

CULLEN, Commissioner.

The appellant, Mrs. E. L. Gates, maintains a trailer (mobile home) park on a por-

tion of the lot on which her residence is located, in the City of Greenville, Kentucky. The appellees, members of a law firm whose law office (owned by the firm) adjoins Mrs. Gates' property, brought suit to enjoin the operation of the trailer park, on the ground that the operation was in violation of the city's zoning ordinance, which placed the area in question in a B–2 Commercial zone, in which trailer parks are not permitted. Mrs. Gates defended on the ground that the operation of the trailer park had predated the adoption of zoning in Greenville and therefore could be continued as a nonconforming use. The circuit court entered judgment granting the requested injunction. Mrs. Gates is appealing from that judgment.

The parties agree that the operation of the trailer park predated the initial adoption of zoning in Greenville in 1958. They further agree that the 1958 ordinance contained a provision providing generally an authorization for the continuance of nonconforming uses. Where the major conflict arises is over a provision of the 1958 ordinance which required the "amortization" of certain kinds of nonconforming uses. The appellant maintains that this provision did not apply to trailer parks. The appellees argue, and the circuit court held, that it did so apply.

The provision in question is as follows:

"All nonconforming signs, billboards, junk yards, lumber yards and similar uses of open land not involving a substantial investment in permanent buildings shall be torn down, altered or otherwise made to conform within two years from the date of the adoption of this ordinance."

For the purposes of this opinion we shall accept the proposition that reasonable provisions for "amortization" of nonconforming uses are valid. See Annotation, 22 A.L.R. 3rd 1134. The question is whether trailer parks were intended to be covered by the above provision of the Greenville ordinance.

In answering the question we give weight to the considerations (1) that the concept of amortizing nonconforming uses was comparatively new in 1958 and had not then received a great deal of acceptance, and (2) that such amortization provisions constitute the taking of property without compensation under the police power for which there should be a clear expression of legislative intent. Under those considerations we think that the amortization provision in question should be construed strictly, as being intended to apply to a limited class of undesirable uses, rather than being construed liberally, as being intended to cover every possible kind of nonconforming use that could validly be required to be amortized. We note that the kinds of uses specifically mentioned in the amortization provision all are of a commercial character, which is indicative of a class designation, such as to suggest appropriate application of the doctrine of ejusdem generis. Cf. Ruh's Ex'rs v. Ruh, 270 Ky. 792, 110 S.W. 2d 1097. We cannot find in the amortization provision a clear expression of intent to extend its application to *all* uses of open land not involving a substantial investment in permanent buildings, without regard to similarity to the kinds of uses mentioned. So it is our conclusion that the amortization provision was not intended to, and did not, apply to trailer parks.

We are strengthened in our conclusion by the fact that since the time the zoning ordinance was adopted (a period of more than ten years) the city authorities of Greenville have never questioned the right of Mrs. Gates to continue the operation of the trailer park, thus making a contemporaneous construction of the ordinance. Cf. City of Louisville v. Louisville Water Company, 105 Ky. 754, 49 S.W. 766.

A further question remains, arising out of a provision of the zoning ordinance as reenacted in 1968. That provision was that a "lawful" nonconforming use of premises existing at the time of reenactment of the ordinance could be continued. The circuit court held that at the time of

reenactment Mrs. Gates' trailer-park operation was not "lawful" because she did not have a permit from the State Department of Health as required by KRS 219.130. Mrs. Gates did obtain such a permit about six weeks after the date of reenactment of the zoning ordinance.

The question again is one of legislative intent. Considering that it is not a normal purpose of a zoning ordinance to serve as a policing instrumentality for law enforcement generally, we do not believe that the ordinance in question, in referring to "lawful" uses, was concerned with any illegality of use other than a use in violation of the previously existing zoning ordinance.[1] Whether or not Mrs. Gates had a permit from the Health Department was not a matter of zoning concern, any more than whether a restaurant was being operated in violation of the zoning laws would be a matter of concern to the Alcoholic Beverage Control Board in issuing a beer license for the restaurant. Cf. Fisher v. Kentucky Alcoholic Beverage Control Board, Ky., 459 S.W.2d 80.

The judgment is reversed with directions to enter judgment in conformity with this opinion.

All concur except EDWARD P. HILL, Jr., J., who dissents.

---

1. Mrs. Gates' operation of the trailer park was not in violation of the previously existing ordinance because it was a permitted nonconforming use.